## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF NORTH CAROLINA
**Charlotte Division**

| | |
|---|---|
| In re: | |
| **TSI Holdings, LLC,** | **CASE NO. 17-30132 (LEAD)** |
| **WSC Holdings, LLC,** | **CASE NO. 17-30338** |
| **SouthPark Partners, LLC and** | **CASE NO. 17-30339** |
| **Sharon Road Properties, LLC.** | **CASE NO. 17-30363** |
| **DEBTORS.** | **CHAPTER 7**<br>**Jointly Administered** |

### TRUSTEE'S MOTION TO RECONSIDER BENCH ORDER (A) TO RE-NOTICE RESPONSE DEADLINE REGARDING TRUSTEE'S CLAIMS REPORT and (B) SETTING CLAIMS FOR CLAIMANTS NOT FILING RESPONSES

Joseph W. Grier, III, the duly appointed trustee ("Trustee") for the above-referenced debtors (the "Debtors") in these jointly-administered bankruptcy cases, through counsel, hereby brings this *Trustee's Motion to Reconsider Bench Order (a) to Re-notice Response Deadline Regarding Trustee's Claims Report and (b) Setting Claims For Claimants Not Filing Responses* (this "Motion"), and in support, respectfully shows the Court as follows:

### BACKGROUND

1.     On January 27, 2017, an involuntary bankruptcy petition (D.E. 1) pursuant to chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Code"), was filed against TSI Holdings, LLC ("TSI"), initiating this case (this "Case").  On February 2, 2017, the Court held an emergency hearing on the petitioning creditors' emergency motion to appoint an interim trustee for the Debtor in this Case (D.E. 5) (the "Trustee Motion").  On February 8, 2017, the Court entered its Order granting the Trustee Motion (D.E. 17), appointing the Trustee.  The Court subsequently entered its *Order For Relief* (D.E. 32) on February 22, 2017.

1

2.      Similar involuntary petitions and motions were filed against WSC Holdings, LLC ("WSC"), SouthPark Partners, LLC ("SPP") and Sharon Road Properties, LLC ("SRP"), and the Court appointed the Trustee and entered orders for relief in those cases.

3.      The Court authorized the joint administration of these four cases by order entered on May 23, 2017 (D.E. 63).

4.      The Court set August 23. 2017 as the deadline for filing proofs of claim in these cases.

5.      On November 1, 2017 the Trustee filed and served his *Trustee's First Omnibus Report of Claims, Objections to Claims, and Recommendations Regarding Claims as to TSI Holdings, LLC, WSC Holdings, LLC, SouthPark Partners, LLC and Sharon Road Properties, LLC* (the "Claims Report") (D.E. 112 in Lead Case) making recommendations on allowance and disallowance of the 265 filed claims. Also on November 1, 2017, the Trustee filed and served a *Notice of Opportunity for Hearing* with regard to the Claims Report, setting December 1, 2017 as the deadline to file a response thereto and setting the initial hearing on the Claims Report for hearing on December 11, 2017.

6.      The Trustee and his professionals believe that TSI, WSC and SPP were operated as Ponzi schemes (collectively, the "Ponzi Scheme") by Rick Siskey ("R. Siskey"). Further, six investors, who R. Siskey qualified as "Outside Investors," in SRP were also part of the Ponzi Scheme.

7.      The Claims Report proposes the use by the Court of the "Net Investment" method of computing claims, which looks solely at money in – money out, no matter how that money was characterized by the Debtors, to determine a net claim. A total of thirteen (13) responses were filed to the Claims Report. Some of those responses challenge the proposed use by the Trustee of the "Net Investment" method and the Court has scheduled a hearing on the

2

methodology for computing the claims of those parties challenging the "Net Investment" method

for January 24, 2018.

8.  At the Court hearing on December 11, 2017, after having reviewed the Claims

Report and statements of counsel, the Court issued an order from the bench directing the Trustee

to re-notice the Claims Report allowing claimants ("Claimants") an additional fifteen (15) days

to file a response thereto (the "Bench Order"), in effect to challenge the "Net Investment"

method. The Court further indicated that it would adopt the recommendation of the Trustee and

set the base claim amounts, using the "Net Investment" method, for Claimants who *do not file* a

response challenging the recommended base claim amount, which was calculated using the "Net

Investment" method, regardless of any future ruling as to methodology for computing a claim as

to Claimants *who filed* a response challenging the "Net Investment" method.

## RELIEF REQUESTED

9.  The Trustee is concerned about the possibility of there being more than one class

of claims with regard to Claimants; that is, claims held by parties who did not file a response to

the Claims Report and which are computed under the "Net Investment" method vs. claims

computed pursuant to some other methodology. Through this Motion the Trustee requests that

the Court reconsider the Bench Order and postpone (a) any order to re-notice a response deadline

on the Claims Report and (b) any decision on the methodology for computing claims held by

Claimants who did not file responses to the Claims Report until after the Court considers the

methodology of claims analysis which is set for January 24, 2018.

## BASIS FOR RELIEF REQUESTED

10. The Trustee asks that the Court, based on information set forth herein, to

reconsider the Bench Order pursuant to Fed. R. Bankr. P. 9024; Fed. R. Civ. P. 60(b)(6).

11.     The Trustee strongly asserts that similarly situated claimants should be treated the same[1] and has recommended the "Net-Investment" method with regard to the Claimants in these Ponzi Scheme cases and will fully brief his position ahead of the January 24, 2018 hearing on claim methodology.

12.     The Trustee, his counsel and his employees have become very familiar with the Claimants in these cases through multiple and lengthy communication with Claimants.

13.     Since being appointed as Trustee in February, 2017, the Trustee and his legal team have learned the following:

    a.     A high percentage of Claimants are of or beyond retirement age;

    b.     A high percentage of Claimants lost their life savings and cannot afford legal counsel;

    c.     A high percentage of Claimants (100%) were completely blindsided by Richard Siskey's death and the exposure of the Ponzi Scheme and, prior thereto, completely trusted Siskey with their money and friendship;

    d.     A high percentage of Claimants have confidence in the Trustee - based on the Trustee's previous descriptions of his duties as a fiduciary for the bankruptcy estates - to protect their interests, to determine claims fairly, to treat similarly situated claims equally, and to maximize asset recovery;

    e.     A high percentage of Claimants do not understand the bankruptcy process;

    f.     A high percentage of Claimants have no records, information or files with regard to their investments with these Debtors (and have relied on the Trustee to provide them information from the Siskey files to support their proofs of claims);

---

[1]     *See Beiger v. I.R.S.*, 496 U.S. 53, 110 S.Ct. 2258, 110 L. Ed.2d 46 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code.  According to that policy, creditors of equal priority should receive pro rata shares of the debtor's property.")

g.    Many Claimants live out of town and/or out of state;

h.    Some Claimants do not have computer access or the ability to scan or fax documents;

i.    Some Claimants were not able to file proofs of claim (and sought help from the Trustee to have their claims filed);

j.    Many Claimants are confused by the process and appear to be too intimidated to send documents to the court or to appear in court.

14.    The following are a few examples of actions taken by Claimants in these cases:

a.    One couple past retirement age traveled from Charleston, SC to the Trustee's office to hand deliver documentation on their accounts with the Debtors believing that personal delivery was necessary.  This trip was a great hardship on them;

b.    One Claimant came to Trustee's office seeking grocery money;

c.    More than one Claimant has used UPS or like stores to fax information to the Trustee due to lack of knowledge on scanning or emailing documentation;

d.    A few Claimants have avoided the process (the Trustee actively solicited some Claimants to file proofs of claim given a perceived fear of the process);

e.    The Trustee has electronically filed claims for a few Claimants who could not understand how to use the court's on-line claim process.

## ARGUMENT

15.    The Trustee's duties include investigating the financial affairs of the debtor and, if a purpose is served, examining proofs of claims and objecting to the allowance of any claim that is improper. 11 U.S.C. § 704(4) & (5).

16.    In a typical, non-Ponzi, bankruptcy case, treatment of claims and method of distribution is clearly set forth in the Bankruptcy Code.  This is not the case for bankruptcy cases

involving Ponzi schemes where methodology for claims determination is not set out in the Bankruptcy Code and therefore must be determined by the courts.

17.    Cases involving Ponzi schemes generally focus on treating claimants equitably with regard to claims and distribution regardless of the claim methodology ordered. *See In re Madoff Inv. Securities LLC,* 654 F.3d 229 (2nd Cir. 2011), *In re Pearlman*, 484 B.R. 241 (M.D. Fla. 2012), C.*F.T.C. v. Barki*, 2009 WL 3839389 (W.D.N.C., 2009), *CFTC v. CapitalStreet Financial*, 2010 WL 2572349 (W.D.N.C., 2010).

18.    The Trustee asserts, and has consistently assured the Claimants, that the Bankruptcy Code demands equal treatment of creditors.

19.    The Court recognized the need to provide equal treatment to similarly situated creditors at the December 11, 2017 hearing, where, while considering whether to enter an order adopting the Trustee's recommendation of claims for all Claimants who did not file responses to the Claims Report, the Court acknowledged that there are ". . . a great many Claimants who occupy a similar perspective, similar legal position, similar set of problems and I think it would be difficult to do substantial justice to all the parties' rights if some of those investors should end up with a recovery and others not or one get one recovery and others get a reduced recovery. . .".

20.    However, in the case at hand, the Trustee believes that re-noticing a new response deadline with regard to the Claims Report, along with the potential consequences of having non-responding claims computed differently than other similarly situated claims, will (1) cause confusion, stress and worry among Claimants; (2) spur time-consuming, resource-expending, otherwise unnecessary calls and correspondences to the Trustee seeking information and assistance; (3) cause some Claimants to file responses; (4) will be ignored by some Claimants who will not file responses; (5) will prejudice Claimants with limited resources; and, (6) may

ultimately have the effect of creating two classes of similarly situated claimants with the only difference being one class filed a response to the Claims Report.

21.    Indeed, every rationally-acting Claimant would object to the Claims Report if the Court is considering approving competing methodologies for similarly-situated claims to preserve the Claimants' right to receive treatment under the methodology that results in the greatest claim amount.

22.    The Trustee proposes that the Court determine the methodology of claims computation on January 24, 2017 after hearing from the parties who filed responses to the Claims Report prior to the December 1, 2017 deadline and from the Trustee. Thereafter, the Court may decide whether it is necessary or advisable to give Claimants another opportunity to file a response in light of the decisions made on that date.

WHEREFORE, the Trustee respectfully requests that the Court enter an Order granting this Motion for reconsideration, relieving the Trustee from having to re-notice a new response period for the Claims Report at this time and not setting the claims of Claimants who did not file a response to the Claims Report until after the hearing on the methodology for computing claims, and awarding such additional relief as is just and proper.

This is the 14th day of December, 2017.

/s/ Joseph W. Grier, III
Joseph W. Grier, III (State Bar No. 7764)
Anna S. Gorman (State Bar No. 20987)
Michael L. Martinez (State Bar No. 39885)
Grier Furr & Crisp, PA
101 North Tryon Street, Suite 1240
Charlotte, North Carolina 28246
Telephone: 704.375.3720; Fax: 704.332.0215
agorman@grierlaw.com

*Attorneys for Joseph W. Grier, III, Ch. 7 Trustee*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

| | |
|---|---|
| **In re:** | |
| **TSI Holdings, LLC,** | **CASE NO. 17-30132 (LEAD)** |
| **WSC Holdings, LLC,** | **CASE NO. 17-30338** |
| **SouthPark Partners, LLC and** | **CASE NO. 17-30339** |
| **Sharon Road Properties, LLC.** | **CASE NO. 17-30363** |
| **DEBTORS.** | **CHAPTER 7** |
| | **Jointly Administered** |

### NOTICE OF HEARING

TAKE NOTICE that on **January 8, 2018, at 9:30 A.M. in Bankruptcy Courtroom 1-4 in the United States Courthouse, 401 West Trade Street, Charlotte, North Carolina,** this Court will conduct a hearing on *Trustee's Motion to Reconsider Bench Order (a) to Re-notice Response Deadline Regarding Trustee's Claims Report and (b) Setting Claims For Claimants Not Filing Responses.*

This is the 14th day of December, 2017.

/s/ Joseph W. Grier, III
Joseph W. Grier, III (State Bar No. 7764)
Anna S. Gorman (State Bar No. 20987)
Michael L. Martinez (State Bar No. 39885)
Grier Furr & Crisp PA
101 North Tryon Street, Suite 1240
Charlotte, North Carolina 28246
Telephone: 704/375.3720; Fax: 704/332.0215
agorman@grierlaw.com

*Attorneys for Joseph W. Grier, III, Trustee*

1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

| | |
|---|---|
| **In re:** | |
| **TSI Holdings, LLC,** | **CASE NO. 17-30132 (LEAD)** |
| **WSC Holdings, LLC,** | **CASE NO. 17-30338** |
| **SouthPark Partners, LLC and** | **CASE NO. 17-30339** |
| **Sharon Road Properties, LLC.** | **CASE NO. 17-30363** |
| **DEBTORS.** | **CHAPTER 7** |
| | **Jointly Administered** |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that the *Trustee's Motion to Reconsider Bench Order (a) to Re-notice Response Deadline Regarding Trustee's Claims Report and (b) Setting Claims For Claimants Not Filing Responses* (the "Motion") and *Notice for Hearing* was served pursuant to the *Order Limiting Service of Process* (D.E. 66) on all parties requesting notice through the Court's electronic noticing system including the Bankruptcy Administrator, by electronic mail to each party in interest where the Trustee has a valid email address, and by posting on the website being maintained by the Trustee regarding these Cases at https://tsiholdings.wordpress.com.

This is the 14th day of December, 2017.

*/s/ Anna S. Gorman*
Anna S. Gorman
Grier Furr & Crisp, PA
101 North Tryon Street, Suite
Charlotte, NC 28246

2