**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**Charlotte Division**

| | |
|---|---|
| In re: | **CASE NO. 17-30132** |
| **TSI Holdings, LLC[1] et al.,** | **CHAPTER 7** |
| | Jointly Administered |
| **DEBTORS.** | |

**TRUSTEE'S MOTION FOR ORDER (I) APPROVING BIDDING AND AUCTION PROCEDURES IN CONNECTION WITH THE SALE OF THE INTEREST OF SHARON ROAD PROPERTIES, LLC IN BISSELL PORTER SISKEY, LLC, (II) APPROVING AGREEMENT WITH STALKING HORSE BIDDER, AND (III) SCHEDULING AUCTION AND SALE APPROVAL HEARING**

Joseph W. Grier, III, the duly-appointed chapter 7 trustee ("Trustee") for Sharon Road Properties, LLC ("SRP"), through counsel, hereby files this *Trustee's Motion for Order (I) Approving Bidding and Auction Procedures in Connection with the Sale of the Interest of Sharon Road Properties, LLC in Bissell Porter Siskey, LLC, (II) Approving Agreement with Stalking Horse Bidder, and (III) Scheduling Auction and Sale Approval Hearing* (this "Motion") and respectfully shows the Court the following in support:

## I.     JURISDICTION AND PROCEDURAL BACKGROUND

### A.     PROCEDURAL BACKGROUND

1.     On January 27, 2017, an involuntary bankruptcy petition pursuant to chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Code"), was filed against TSI Holdings, LLC ("TSI"), initiating the above-captioned lead case.

2.     The Court entered an Order appointing the Trustee on February 8, 2017 and an Order for Relief as to TSI on February 22, 2017.

---

[1]     These jointly administered cases are those of the following debtors:  TSI Holdings, LLC, Case No. 17-30132, WSC Holdings, LLC Case No. 17-30338, SouthPark Partners, LLC Case No. 17-30339 and Sharon Road Properties, LLC Case No. 17-30363.

3.      Evidence presented to the Court in the motion to appoint an interim trustee for
TSI, including an affidavit of FBI Special Agent Timothy Darin Stutheit, indicated that Rick
Siskey ("Siskey"), prior to his death on December 28, 2016, operated TSI as part of a Ponzi
scheme (the "Ponzi Scheme").

4.      Based in part on the concern that other entities operated by Siskey were part of
the Ponzi Scheme, involuntary petitions and emergency motions to appoint an interim trustee
were filed against other Siskey-related entities, including SRP (collectively with TSI, the
"Debtors").

## B.      JURISDICTION

5.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This is
a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O).  Venue properly lies in
this judicial district pursuant to 28 U.S.C. § 1409(a).  The statutory predicate for the relief
requested herein is § 363 of the Code.

## II.      FACTUAL BACKGROUND

### A.      THE PONZI SCHEME

6.      Based on the Debtors' records, and other evidence, the Trustee and his
professionals are of the opinion that the Debtors—with the exception of SRP—were each
operated as part of the Ponzi Scheme.

7.      Conversely, SRP owns a 32.55% interest (the "BPS Interest") in Bissell Porter
Siskey, LLC ("BPS"), which in turn owns a commercial building located at 4521 Sharon Road,
Charlotte, North Carolina (the "Office Building").

8.      BPS and its agents—not Siskey or anyone supervised by Siskey—managed all of
the operations and finances of the Office Building, including the routine submission of accurate

reports to SRP and the transfer to SRP of SRP's share of Office Building profits, after deducting

SRP's legitimate share of expenditures and capital improvements.

9.     The books and records of SRP reflect membership interests held by investors in

SRP which total 100%.  The financial records of SRP were maintained separately from those of

the other Debtors.  SRP's members ("Members") received rental income from the SRP bank

account traceable directly to the Office Building rents.  Schedule K-1 tax forms were prepared

and distributed to the Members annually pursuant to their ownership interests.

10.     Based on the foregoing, the Trustee is treating SRP as a legitimate business

enterprise that existed independently from the Ponzi Scheme.

### B.     NO OTHER TANGIBLE SRP ASSETS

11.     Other than the BPS Interest, the Trustee has identified no tangible assets to

administer on behalf of SRP's bankruptcy estate.

### C.     THE OFFICE BUILDING

12.     BPS's only tangible asset is the Office Building.

13.     The Office Building includes an approximately three-acre parcel of land located

across Sharon Road from the South Park Mall in Charlotte, North Carolina.

14.     The Office Building is a 70,839 square foot multi-tenant office building, which

generates rents sufficient to cover operating and maintenance costs and to make distributions to

BPS's members on a regular basis.

15.     The Trustee receives monthly reports from BPS detailing the income and

expenses relating to the Office Building.

16.     The remaining 67.45% interest in BPS is owned by Bissell Porter Three, LLC

("BP3").  BP3 agrees that, pursuant to the terms of BPS's operating agreement (the "Operating

Agreement"), the Trustee has the full power and authority to transfer SRP's economic interest in BPS only, but not any voting rights or any other portion of SRP's BPS membership interest.

### D.    MARKETING EFFORTS

17.    On November 15, 2017, the Court entered an order approving the employment of Bailey W. Patrick and his firm, MPV Properties, LLC ("MPV"), to serve as the Trustee's broker to find a suitable purchaser for the BPS Interest.

18.    MPV has actively marketed the BPS Interest since November.

19.    Although multiple parties have demonstrated interest in the BPS Interest and have conducted an investigation into the performance of the Office Building, only one formal offer to purchase has been made as of the date of this Motion.

### E.    STALKING HORSE BID

20.    The Trustee has received a Stalking Horse bid from QuickLiquidity, LLC (the "Stalking Horse"), a copy of which is attached to this Motion as Exhibit A (the "Stalking Horse Bid").

21.    The Stalking Horse Bid generally provides as follows:

(a)    the initial purchase price for the BPS Interest shall be $1,600,000.00 (the "Initial Bid Price") with no financing contingencies;

(b)    the Trustee shall have a marketing period of thirty (30) days following entry of an order approving this Motion (the "Bid Deadline") to solicit additional offers for the BPS Interest;

(c)    if a Qualified Bid (defined below) is received on or before the Bid Deadline, then the Trustee shall conduct an auction of the BPS Interest pursuant to the bidding and auction procedures defined below within thirty (30) days of the Bid Deadline;

(d)    the Trustee shall schedule a time acceptable to the Court within thirty (30) days following the Bid Deadline to conduct (i) any auction of the BPS Interest and (ii) a hearing to confirm the sale pursuant to § 363 of the Code;

      (e)    if the Stalking Horse is the winning bid at the auction or if no Qualified Bids are received on or before the Bid Deadline, then the Stalking Horse shall close on the purchase of the BPS Interest within ten (10) days of an order confirming the sale becoming a final, non-appealable order.

      (f)    if the Stalking Horse is not the winning bidder at the auction or if the Trustee cancels the sale for no fault of the Stalking Horse, then the Trustee shall pay the Stalking Horse a break-up fee in the amount of $40,000.00 (the "Break-Up Fee") contemporaneously with the closing or within fourteen (14) days of cancelling the sale.

22.    The Stalking Horse is neither an "insider" of SRP within the meaning of 11 U.S.C. § 101(31) nor otherwise affiliated or related to SRP.

23.    The Trustee believes that a fair value of the BPS Interest exceeds the Initial Bid Price. However, based on the advice of MPV, the Trustee believes that agreeing to the terms of the Stalking Horse Bid will compel potential purchasers to come forward and will otherwise generate additional interest in the BPS Interest reasonably likely to facilitate an effective auction of the BPS Interest.

24.    In the opinion of the Trustee, the Break-Up Fee is reasonable in amount and beneficial to the bankruptcy estate. The Stalking Horse Bid promotes more competitive bidding and establishes a reasonable floor for the auction of the BPS Interest, which thereby substantially increases the likelihood that the ultimate sale price will reflect the true value of the BPS Interest.

### F.    BIDDING AND AUCTION PROCEDURES

25.    In order to obtain the highest and otherwise best bid for the BPS Interest and to facilitate an orderly and effective auction, the Trustee proposes the following bidding and auction procedures (the "Bidding and Auction Procedures").

      (a)    Any person(s) or entity(ies) wishing to participate in the auction of the BPS Interest (the "Auction") shall deliver, on or before the Bid Deadline, an executed proposed purchase contract to: MPV Properties, LLC, ATTN: Bailey W. Patrick, 2400 South Boulevard, Suite 300, Charlotte, NC 28203, *BPatrick@mpvre.com*.

(b)    The Trustee shall retain complete discretion to determine whether a purchase contract received qualifies to participate in the Auction (a "Qualified Bid").  At a minimum, a Qualified Bid will have the following characteristics, unless otherwise ordered by the Court:

(i)    is timely submitted on or before the Bid Deadline;

(ii)    proposes a purchase price that exceeds the Initial Bid Price by at least $100,000.00;

(iii)    identifies the person(s) or entity(ies) submitting the purchase contract (the "Bidder"), including a disclosure of any affiliation or relationship with SRP, Siskey, any insider(s) of SRP, or any creditor(s) of SRP;

(iv)    provides evidence satisfactory to the Trustee of the Bidder's financial wherewithal to consummate the proposed transaction (if requested by the Trustee, the Bidder may be required to make a refundable earnest money deposit with the Trustee in order to have a Qualified Bid);

(v)    warrants that it is not subject to any additional due diligence, any financing contingency(ies), or any further board or similar corporate approval;

(vi)    provides that it is irrevocable by the Bidder until the later of (A) consummation of a sale of the BPS Interest to any other bidder and (B) the first business day that is thirty (30) days after the Auction;

(vii)    commits to closing on the purchase of the BPS Interest within ten (10) days of an order confirming the sale becoming a final, non-appealable order;

(viii)    agrees that the sale of the BPS Interest is "as-is, where-is" with no warranties express or implied by the Trustee, other than a warranty that the Trustee has done nothing to impair title and will defend title against the lawful claims of all persons claiming by, under, or through the Trustee; and

(ix)    represents and warrants to the Trustee that the Bidder (A) has relied solely upon the Bidder's own independent review, investigation, and/or inspection of the BPS Interest in making the bid and (B) did not rely upon any written or oral statements, representations, promises, warranties, or guarantees whatsoever, whether express, implied, by operation of law or otherwise, by the Trustee regarding the BPS Interest.

(c)   The Stalking Horse Bid is automatically deemed to be a Qualified Bid.

(d)   All due diligence shall be completed prior to the Bid Deadline, such that all bids at the Auction will be free of all contingencies other than the Court's confirmation of the sale free and clear of liens, with any liens transferring to the sale proceeds.  The Trustee shall provide potential bidders with any and all documents requested prior to the Bid Deadline that are in the Trustee's possession or are readily available to the Trustee.  The Trustee may require a potential bidder to execute a confidentiality agreement as a condition to providing documents to the potential bidder.   The Trustee shall not be obligated to furnish access to any information of any kind whatsoever regarding the BPS Interest after the Bid Deadline.

(e)   After a Bidder submits a bid, the Trustee may, in the Trustee's complete discretion, communicate with the Bidder and request any additional information deemed necessary to evaluate whether the bid should be accepted as a Qualified Bid.

(f)   The Trustee will send, at least seven (7) days prior to the Auction, a written Auction invitation to all Bidders submitting Qualified Bids.

(g)   If no Qualified Bids other than the Stalking Horse Bid are received, then the Trustee shall schedule a hearing with the Court to confirm the sale to the Stalking Horse within 30 days of the Bid Deadline.

(h)   If any additional Qualified Bids are received, then the Trustee (or the Court) shall conduct the Auction within thirty (30) days of the Bid Deadline in Bankruptcy Courtroom 1-4 in the United States Courthouse, 401 West Trade Street, Charlotte, North Carolina.

(i)   Only Bidders submitting Qualified Bids and the Stalking Horse are eligible to participate in the Auction.  All Bidders wishing to bid at the Auction shall appear at the Auction—either in person or telephonically—through a duly authorized representative.

(j)   Prior to the Auction, the Trustee shall select the Qualified Bid that, in the Trustee's complete discretion, reflects the highest or otherwise best value for the BPS Interest as the Auction's opening bid.  The Trustee (or the Court) shall then commence the Auction by announcing the opening bid.  Thereafter, Auction participants may submit bids that are higher and better than a prior bid in increments of at least $100,000.00 until the Trustee selects a successful bid; *provided, however*, that the Trustee (or the Court) shall retain complete discretion to adjust the overbid increments upward or downward during the Auction.

(k)  Subject to the approval of the Court, the Trustee may adjourn the Auction and/or adopt supplemental Auction rules or procedures in order to facilitate a more effective Auction.

(l)  The Trustee shall select the successful bid and a back-up bid during the Auction and conclude the Auction by announcing the successful bid and a back-up bid to the Court. At the conclusion of the Auction, the Court will conduct a confirmation hearing to consider whether to approve the sale pursuant to § 363 of the Code.

(m)  If the Court approves a sale of the BPS Interest based on the successful bid, then the maker of the successful bid shall close on the purchase of the BPS Interest within ten (10) days of the order confirming the sale becoming a final, non-appealable order. If the maker of the successful bid fails to consummate the purchase of the BPS Interest, then the maker of the back-up bid shall close on the purchase of the BPS Interest within twenty (20) days of the order confirming the sale becoming a final, non-appealable order. .

26.    The Trustee expressly reserves the right to determine whether any bid is a Qualified Bid and whether any Qualified Bid is the successful bid or back-up bid. The Trustee expressly reserves the right to seek all available damages from the maker of the successful bid or the back-up bid if such bidder wrongfully fails to consummate the purchase of the BPS Interest pursuant to these Bidding and Auction Procedures.

27.    Although the Trustee is unaware of any liens encumbering the BPS Interest, the Trustee proposes to transfer the BPS Interest free and clear of all liens, with any liens transferring to the sale proceeds, pursuant to § 363(f) of the Code.

## G.    PROPOSED NOTICE PROCEDURE

28.    Upon entry of an order approving this Motion, the Trustee proposes to serve notice of the Bidding and Auction Procedures in the form appearing as Exhibit B, attached hereto and incorporated herein by reference (the "Auction Notice"), as follows:

(a)  upon the Bankruptcy Administrator and those parties requesting notice via ECF pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") via ECF;

      (b)   upon on any party-in-interest for whom the Trustee has a valid electronic mail address by electronic mail only;

      (c)   by posting on the Siskey-Related Bankruptcy Case Webpage, https://tsiholdings.wordpress.com/.

29.    In addition to the foregoing, the Trustee is serving a copy of this Motion on BP3, the other holder of a membership interest in BPS.

### III.    RELIEF REQUESTED

30.    Through this Motion, the Trustee seeks entry of an order by the Court: (a) approving the Stalking Horse Bid; (b) approving the Bidding and Auction Procedures; (c) approving the form and manner of the Auction Notice; (d) authorizing the Trustee to engage in any and all conduct necessary or appropriate to carry out the Bidding and Auction Procedures; (e) declaring that the Trustee has the authority under the Operating Agreement to transfer SRP's economic interest in BPS; and (f) scheduling the Auction and sale confirmation hearing at some date and time convenient for the Court no later than sixty (60) days following entry of an order granting this Motion, whereby the Court will consider whether to authorize the sale of the BPS Interest free and clear of all liens, with any liens transferring to the proceeds of the sale.

### IV.    BASIS FOR RELIEF REQUESTED

31.    Section 363 of the Code provides that a trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Bankruptcy Rule 2002 requires twenty-one (21) days' notice for a motion to sell property other than in the ordinary course of business and that such a notice "include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections." FED. R. BANKR. P. 2002(a)(2) & (c)(1).

32.     Bankruptcy Rule 6004(f)(1) authorizes sales of property of the bankruptcy estate outside of the ordinary course of business to be by private sale or by public auction.  FED. R. BANKR. P. 6004(f)(1).

33.     Courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales.  *See, e.g.*, *In re Financial News Network, Inc.*, 126 B.R. 152, 156 (S.D.N.Y. 1991) (recognizing that "considerable authority" exists in favor of invoking "court-imposed rules for the disposition of assets . . . to provide an adequate basis for comparison of offers, and to provide for a fair and efficient resolution of bankrupt estates").

34.     With respect to break-up fees, courts typically hold that paying such fees will be appropriate when doing so is "actually necessary to preserve the value of the estate," including when the "break-up fee promote[s] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited" or when the break-up fee "increase[es] the likelihood that the price at which the debtor is sold will reflect its true worth."  *See O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 535–37 (3d Cir. 1999).

## V.     ARGUMENT

35.     In the opinion of the Trustee, the terms appearing in the Stalking Horse Bid form a reasonable basis upon which to construct an efficient process to sell the BPS Interest. Specifically with respect to the proposed Break-Up Fee, the Trustee believes payment of the Break-Up Fee, by encouraging the Stalking Horse Bid, secures both (a) a floor for the ultimate

BPS Interest purchase price and, more importantly, (b) a more competitive bidding process, including by attracting bids that might not otherwise have been made at all.

36.     The Trustee has determined that the sale of the BPS Interest pursuant to the Bidding and Auction Procedures, by public auction, and otherwise in accordance with this Motion will ensure a fair and reasonable process that is likely to yield the maximum value for the BPS Interest.

37.     The Trustee submits that the form and manner of the Auction Notice fully comply with Bankruptcy Rule 2002 and are otherwise reasonably calculated to provide timely and adequate notice of the proposed sale of the BPS Interest to the Members and all other parties-in-interest that are entitled to notice in this case.

38.     BP3 acknowledges and agrees that, pursuant to the terms of the Operating Agreement, the Trustee has the full power and authority to transfer SRP's economic interest in BPS only, but not any voting rights or any other portion of SRP's membership interest in BPS.

**WHEREFORE**, the Trustee prays that the Court will enter an Order:

1)     Granting this Motion;

2)     Approving the Stalking Horse Bid;

3)     Approving the Bidding and Auction Procedures;

4)     Approving the form and manner of the Auction Notice;

5)     Authorizing the Trustee to engage in any and all conduct necessary or appropriate to carry out the Bidding and Auction Procedures;

6)     Declaring that the Trustee has the authority under the Operating Agreement to transfer SRP's economic interest in BPS;

7)     Scheduling the Auction and sale confirmation hearing at some date and time convenient for the Court no later than sixty (60) days following entry of an order granting this Motion, whereby the Court will consider whether to authorize the sale of the BPS Interest free and clear of all liens, with any liens transferring to the proceeds of the sale; and

8)      Granting such other relief as is just and proper.

This is the 23d day of March, 2018.

_/s/ Michael L. Martinez_
Joseph W. Grier, III (N.C. Bar No 7764)
Michael L. Martinez (N.C. Bar No. 39885)
Grier Furr & Crisp, PA
101 North Tryon Street, Suite 1240
Charlotte, NC 28246
Phone:  704/375.3720; Fax:  704/332.0215
Email:  mmartinez@grierlaw.com

*Attorneys for Joseph W. Grier, III, Trustee*

March 22, 2018                                              QuickLiquidity

Joseph W. Grier, III
Grier Furr & Crisp, P.A
Chapter 7 Trustee
101 N. Tryon Street Suite 1240
Charlotte, NC 28246
Phone: 704-332-0201
jgrier@grierlaw.com

RE:    Bankruptcy Case Sharon Road Properties, LLC. Case No.: 3:17-bk-30363.
       Bankruptcy Estate's 32.55% interest in Bissell Porter Siskey, LLC.

Dear Mr. Grier:

This Letter Agreement is an Offer to Purchase the above referenced partnership interest
("Property") from the Trustee of the Bankruptcy of Sharon Road Properties, LLC ("Seller").
This Letter Agreement provides the terms and conditions under which QuickLiquidity, LLC or
assignee, ("Buyer") would purchase the Property; *provided, however*, that the effectiveness of
this Letter Agreement is conditioned upon the approval of the Bankruptcy Court.

| | |
|---|---|
| Purchase Price: | $1,600,000.00 |
| Source of Financing: | All Cash |
| Bankruptcy Court Approval: | A motion seeking Bankruptcy Court approval is required within five (5) business days following the execution of this Letter Agreement. Seller shall file the motion, in a form reasonably satisfactory to Buyer, seeking Bankruptcy Court approval of the sale of all right, title and interest of the Trustee in and to the Property (the "Sale Motion"). The Sale Motion shall incorporate this Letter Agreement and the bidding terms reflected herein. The Sale Motion shall request hearing, upon proper notice, and shall contain provisions relative to the payment of the breakup fee in the event the Seller cancels the sale or an entity other than Buyer purchases the Property. |
| Breakup Fee: | $40,000.00 shall be paid by the Seller to the Buyer (a) within fourteen (14) days of Seller canceling the sale based on no fault of Buyer; or (b) contemporaneously with the closing if an entity or person other than Buyer purchases the Property. |

# EXHIBIT A

| | |
|---|---|
| Bidding Procedures: | Seller shall have a marketing period to solicit other offers for up to 30 days following entry of a Court order approving the Sale Motion (the "Bid Deadline"). No other offer shall be considered unless it is $100,000.00 or more than the Purchase Price. If Seller receives an offer of $100,000.00 or more, all subsequent offers at the auction contemplated herein shall be at least $100,000.00 in excess of the prior offer. If Seller receives a Qualified Bid on or before the Bid Deadline, then the Seller is allowed to hold an auction within 30 days of the Bid Deadline. |
| Proposed Timing: | Buyer to close within ten (10) days of an Order confirming the final sale becoming a final, non-appealable order. |
| Other Terms: | This offer does not include an agreement to assume any of the guaranties or indemnities given in connection with the loans to the real property, companies, or partnerships. Consequently, this offer is conditioned upon there being no such assumption of the existing guaranties/indemnities.  Sale is "as-is, where-is" with no warranties express or implied. |
| Subject To: | Seller shall provide Buyer with any and all documents reasonably requested by Buyer prior to the Bid Deadline that are in Seller's possession or readily available to Seller.  If Seller fails to meet this obligation or if the Buyer is unsatisfied with the documents, then Buyer has the right to cancel the Letter Agreement. These items include but are not limited to: 2 Year Tax Returns, Rent Roll, Copy of Mortgage, and Copy of Operating Agreement.  In the event there is a material change in the assets and/or liabilities for Bissell Porter Siskey, LLC between the date of this Letter Agreement and the closing on the Property, then Buyer shall have the right to cancel the Letter Agreement. |

Please call me directly at (561) 221-0881 x102 if you have any questions.   We look forward to working with you.

Sincerely,
QuickLiquidity

By: A/ Yoni Miller
Its: Manager


Accepted:

QUICKLIQUIDITY | 500 NE SPANISH RIVER BLVD #205 | BOCA RATON, FL 33431 | P: 561-221-0881 | QUICKLIQUIDITY.COM

**EXHIBIT A**

_____

Joseph W. Grier, III, Trustee for Chapter 7 Sharon Road Properties, LLC

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| In re: | **CASE NO. 17-30132** |
| **TSI Holdings, LLC² et al.,** | **CHAPTER 7**<br>Jointly Administered |
| **DEBTORS.** | |

<u>**AUCTION NOTICE**</u>

On April ▓, 2018, the U.S. Bankruptcy Court for the Western District of North Carolina (the "Court") granted the *Trustee's Motion for Order (I) Approving Bidding and Auction Procedures in Connection with the Sale of the Interest of Sharon Road Properties, LLC in Bissell Porter Siskey, LLC, (II) Approving Agreement with Stalking Horse Bidder, and (III) Scheduling Auction and Sale Approval Hearing* (the "Motion") and entered an order in the above-captioned jointly-administered bankruptcy cases approving the Bidding and Auction Procedures proposed by Joseph W. Grier, III, the duly-appointed chapter 7 trustee ("Trustee") for Sharon Road Properties, LLC ("SRP"), which relate to the sale of SRP's 32.55% interest in Bissell Porter Siskey, LLC (the "BPS Interest"). The Bidding and Auction Procedures are as follows:

<u>Assets to be Sold</u>: The Trustee seeks to sell the interest owned by Sharon Road Properties, LLC ("SRP") in Bissell Porter Siskey, LLC ("BPS"). BPS owns a commercial building located at 4521 Sharon Road, Charlotte, North Carolina (the "Office Building"). The Office Building is a 70,839 square foot multi-tenant office building, which generates rents sufficient to cover operating and maintenance costs and to make distributions to BPS's members on a regular basis. The Office Building includes an approximately three-acre parcel of land located across Sharon Road from the South Park Mall in Charlotte, North Carolina. The Trustee receives monthly reports from BPS detailing the income and expenses relating to the Office Building.

<u>Bid Deadline</u>: Any person(s) or entity(ies) wishing to participate in the auction of the BPS Interest (the "Auction") shall deliver, **on or before May ▓, 2018** (the "Bid Deadline"), an executed proposed purchase contract to: MPV Properties, LLC, ATTN: Bailey W. Patrick, 2400 South Boulevard, Suite 300, Charlotte, NC 28203, *BPatrick@mpvre.com*.

<u>Bid Requirements</u>: The Trustee shall retain complete discretion to determine whether a purchase contract received qualifies to participate in the Auction (a "Qualified Bid"). At a minimum, a Qualified Bid will have the following characteristics, unless otherwise ordered by the Court.

    (1) A Qualified Bid must be timely submitted on or before the Bid Deadline.

    (2) A Qualified Bid proposes a purchase price that exceeds <u>$1,700,000.00</u>.

---

²     These jointly administered cases are those of the following debtors: TSI Holdings, LLC (17-30132), WSC Holdings, LLC (17-30338), SouthPark Partners, LLC (17-30339), and Sharon Road Properties, LLC (17-30363).

<u>**EXHIBIT B**</u>

(3) A Qualified Bid identifies the person(s) or entity(ies) submitting the purchase contract (the "Bidder"), including a disclosure of any affiliation or relationship with SRP, Richard C. (Rick) Siskey, any insider(s) or creditor(s) of SRP.

(4) A Qualified Bid provides evidence satisfactory to the Trustee of the Bidder's financial wherewithal to consummate the proposed transaction (if requested by the Trustee, the Bidder may be required to make a refundable earnest money deposit with the Trustee in order to have a Qualified Bid).

(5) A Qualified Bid warrants that it is not subject to any additional due diligence, any financing contingency(ies), or any further board or similar corporate approval.

(6) A Qualified Bid provides that it is irrevocable by the Bidder until the later of (A) consummation of a sale of the BPS Interest to any other bidder and (B) the first business day that is thirty (30) days after the Auction.

(7) A Qualified Bid commits to closing on the purchase of the BPS Interest within ten (10) days of an order confirming the sale becoming a final, non-appealable order.

(8) A Qualified Bid agrees that the sale of the BPS Interest is "as-is, where-is" with no warranties express or implied by the Trustee, other than a warranty that the Trustee has done nothing to impair title and will defend title against the lawful claims of all persons claiming by, under, or through the Trustee.

(9) A Qualified Bid represents and warrants to the Trustee that the Bidder (A) has relied solely upon the Bidder's own independent review, investigation, and/or inspection of the BPS Interest in making the bid and (B) did not rely upon any written or oral statements, representations, promises, warranties, or guarantees whatsoever, whether express, implied, by operation of law or otherwise, by the Trustee regarding the BPS Interest.

**DUE DILIGENCE**:  All due diligence must be completed by any Bidders on or before the Bid Deadline, such that all bids at the Auction will be **free of all contingencies** other than the Court's confirmation of the sale free and clear of liens, with any liens transferring to the sale proceeds.  The Trustee shall provide Bidders with any and all documents requested prior to the Bid Deadline that are in the Trustee's possession or are readily available to the Trustee.  The Trustee may require a Bidder to execute a confidentiality agreement as a condition to providing documents to the Bidder.  The Trustee shall not be obligated to furnish access to any information of any kind regarding the BPS Interest after the Bid Deadline.

**SELECTION OF QUALIFIED BIDS**:  After a Bidder submits a bid, the Trustee may, in the Trustee's complete discretion, communicate with the Bidder and request any additional information deemed necessary to evaluate whether the bid should be accepted as a Qualified Bid.  The Trustee will send, at least seven (7) days prior to the Auction, a written Auction invitation to all Bidders submitting Qualified Bids.

**LOCATION OF AUCTION**:  If any Qualified Bids (other than the "Stalking Horse Bid" (as that term is defined in the Motion)) are received, then the Trustee (or the Court) shall conduct the Auction in **Bankruptcy Courtroom 1-4 in the United States Courthouse, 401 West Trade Street, Charlotte, North Carolina**.

2

# EXHIBIT B

**DATE OF AUCTION**:  The Auction and/or sale confirmation hearing will be on **June ▮▮, 2018**.

**AUCTION PROCEDURES**:  The following rules shall govern the Auction.

(1) Only Bidders submitting Qualified Bids and the Stalking Horse (as that term is defined in the Motion) are eligible to participate in the Auction.  All Bidders wishing to bid at the Auction shall appear at the Auction—either in person or telephonically—through a duly authorized representative.

(2) Prior to the Auction, the Trustee shall select the Qualified Bid that, in the Trustee's complete discretion, reflects the highest or otherwise best value for the BPS Interest as the Auction's opening bid.  The Trustee (or the Court) shall then commence the Auction by announcing the opening bid.

(3) Thereafter, Auction participants may submit bids that are higher and better than a prior bid in increments of at least $100,000.00 until the Trustee selects a successful bid; *provided, however*, that the Trustee (or the Court) shall retain complete discretion to adjust the overbid increments upward or downward during the Auction.

(4) Subject to the approval of the Court, the Trustee may adjourn the Auction and/or adopt supplemental Auction rules or procedures in order to facilitate a more effective Auction.

(5) The Trustee shall select the successful bid and a back-up bid during the Auction and conclude the Auction by announcing the successful bid and a back-up bid to the Court.

(6) At the Auction's conclusion, the Court will conduct a confirmation hearing to consider whether to approve the sale pursuant to § 363 of the Code.

**CONSUMMATION OF SALE**:  If the Court approves a sale of the BPS Interest based on the successful bid, then the maker of the successful bid shall close on the purchase of the BPS Interest within ten (10) days of the order confirming the sale becoming a final, non-appealable order.  If the maker of the successful bid fails to consummate the purchase of the BPS Interest, then the maker of the back-up bid shall close on the purchase of the BPS Interest within twenty (20) days of the order confirming the sale becoming a final, non-appealable order.

**RESERVATION OF RIGHTS**:  The Trustee expressly reserves the right to determine whether any bid is a Qualified Bid and whether any Qualified Bid is the successful bid or back-up bid.  The Trustee expressly reserves the right to seek all available damages from the maker of the successful bid or the back-up bid if such bidder wrongfully fails to consummate the purchase of the BPS Interest pursuant to these Bidding and Auction Procedures.

Dated:  April ▮▮, 2018

By:   Michael L. Martinez
      Grier Furr & Crisp, PA
      101 N. Tryon St., Ste. 1240
      Charlotte, NC 28246
      Phone:  704/332.0209
      Email:  mmartinez@grierlaw.com

3

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| In re: | **CASE NO. 17-30132** |
| **TSI Holdings, LLC[3] et al.,** | **CHAPTER 7**<br>Jointly Administered |
| **DEBTORS.** | |

<u>**NOTICE OF HEARING**</u>

TAKE NOTICE that on **Monday, April 23, 2018, at 9:30 A.M. in Bankruptcy Courtroom 1-4 in the United States Courthouse, 401 West Trade Street, Charlotte, North Carolina**, this Court will conduct a hearing on the *Trustee's Motion for Order (I) Approving Bidding and Auction Procedures in Connection with the Sale of the Interest of Sharon Road Properties, LLC in Bissell Porter Siskey, LLC, (II) Approving Agreement with Stalking Horse Bidder, and (III) Scheduling Auction and Sale Approval Hearing* (the "Motion").

The Motion seeks Court approval of a process by which the Trustee may sell the interest held by Sharon Road Properties, LLC in Bissell Porter Siskey, LLC (the "BPS Interest"). Bissell Porter Siskey, LLC owns a commercial building located at 4521 Sharon Road, Charlotte, North Carolina. The BPS Interest represents a 32.55% interest equity interest in Bissell Porter Siskey, LLC.

In summary, the Motion proposes that the Trustee will solicit "Qualified Bids" (as defined in the Motion) for thirty (30) days following entry of an order approving the Motion (the "Bid Deadline") and then hold an auction a few weeks thereafter in which anyone submitting a Qualified Bid might participate. As set forth more fully in the Motion, **if no Qualified Bids are received by the Trustee on or before the Bid Deadline, then the Trustee will seek court approval to sell the BPS Interest to QuickLiquidity, LLC for $1,600,000.00**.

<u>Your rights may be affected</u>. You should read this Notice carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

IF YOU DO NOT WANT THE COURT TO GRANT THE RELIEF REQUESTED IN THE MOTION OF IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN YOU OR YOUR ATTORNEY SHOULD ATTEND THIS HEARING AT 9:30 A.M. ON MONDAY, APRIL 23, 2018, IN BANKRUPTCY COURTROOM 1-4 IN THE UNITED STATES COURTHOUSE, 401 WEST TRADE STREET, CHARLOTTE, NORTH CAROLINA.

---

[3] These jointly administered cases are those of the following debtors: TSI Holdings, LLC, Case No. 17-30132, WSC Holdings, LLC Case No. 17-30338, SouthPark Partners, LLC Case No. 17-30339 and Sharon Road Properties, LLC Case No. 17-30363.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief requested in the motion and may enter an order approving the motion.

This, the 23d day of March, 2018.

*/s/  Michael L. Martinez*
Michael L. Martinez (N.C. State Bar No. 39885)
Grier Furr & Crisp PA
101 North Tryon Street, Suite 1240
Charlotte, North Carolina 28246
Telephone: 704/375.3720; Fax: 704/332.0215
mmartinez@grierlaw.com

*Attorneys for Joseph W. Grier, III, Trustee*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| In re: | **CASE NO. 17-30132** |
| **TSI Holdings, LLC⁴ et al.,** | **CHAPTER 7** |
| | Jointly Administered |
| **DEBTORS.** | |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing *Notice of Hearing* were served pursuant to the *Order Limiting Service of Process* (D.E. 66):

> (i) on all parties requesting notice through the Court's electronic noticing system (including the Bankruptcy Administrator's office) by electronic service;

> (ii) on each party-in-interest for whom the Trustee has a valid email address by email; and

> (iii) by posting on the website being maintained by the Trustee regarding the above-captioned, jointly-administered cases, https://tsiholdings.wordpress.com.

The undersigned further hereby certifies that copies of the foregoing *Trustee's Motion for Order (I) Approving Bidding and Auction Procedures in Connection with the Sale of the Interest of Sharon Road Properties, LLC in Bissell Porter Siskey, LLC, (II) Approving Agreement with Stalking Horse Bidder, and (III) Scheduling Auction and Sale Approval Hearing* **and** *Notice of Hearing* were served via email and/or U.S. Mail, postage prepaid, on the following parties as indicated.

QuickLiquidity, LLC
Attn:  A. Yoni Miller
500 NE Spanish River Blvd., #205
Boca Raton, FL 33431
ymiller@quickliquidity.com
*Via email and U.S. Mail*

David S. Melin
Rayburn Cooper & Durham, P.A.
227 West Trade Street, Suite 1200
Charlotte, NC 28202
dmelin@rcdlaw.net
(Attorneys for Bissell Porter Three, LLC)
*Via email and U.S. Mail*

---

⁴    These jointly administered cases are those of the following debtors:  TSI Holdings, LLC, Case No. 17-30132, WSC Holdings, LLC Case No. 17-30338, SouthPark Partners, LLC Case No. 17-30339 and Sharon Road Properties, LLC Case No. 17-30363.

Medalist Capital, Inc.
2849 Paces Ferry Road, Suite 280
Atlanta, GA 30339
*Via U.S. Mail*

Jackson National Life Insurance Company
c/o PPM Finance, Inc.
225 West Wacker Drive, Suite 1200
Chicago, IL 60606
Attn:  Vice President, Loan Servicing
*Via U.S. Mail*

Jackson National Life Insurance Company
c/o PPM Finance, Inc.
225 West Wacker Drive, Suite 1200
Chicago, IL 60606
Attn:  Vice President, Settlements & Administration
*Via U.S. Mail*

This, the 23d day of March, 2018.

*/s/  Michael L. Martinez*
Michael L. Martinez (N.C. State Bar No. 39885)
Grier Furr & Crisp PA
101 North Tryon Street, Suite 1240
Charlotte, North Carolina 28246
Telephone: 704/375.3720; Fax: 704/332.0215
mmartinez@grierlaw.com

*Attorneys for Joseph W. Grier, III, Trustee*